**F I L E D**

**UNITED STATES COURT OF APPEALS**

**August 16, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SELENA MATA, also known as
Selena Gerhardt,

    Defendant - Appellant.

No. 04-8042
(D. Wyoming)
(D.Ct. No. 03-CR-166-02-J)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is

therefore ordered submitted without oral argument.

Selena Mata, aka Selena Gerhardt, was sentenced to 210 months

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

imprisonment following her guilty plea to conspiracy to possess with intent to distribute and to distribute 500 grams or more of methamphetamine. She appeals, arguing she was not given the proper amount of sentencing credit and was sentenced in violation of *Blakely v. Washington*, 124 S.Ct. 2531 (2004). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I. Background

On July 23, 2003, Mata, while serving a six-year state court prison term for possession with intent to distribute a controlled substance, was charged in the United States District Court for the District of Wyoming with conspiracy to possess with intent to distribute and to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Mata eventually pled guilty. At the change of plea hearing and in her plea agreement, Mata stipulated that the amount of methamphetamine involved in the conspiracy was more than 1.5 kilograms but less than five kilograms. A presentence investigation report (PSR) was prepared.

The probation officer determined Mata's offense involved 2.04 kilograms of methamphetamine, establishing a base offense level of 34. *See* USSG §2D1.1(a)(3) and (c)(3) (assigning a base offense level of 34 for "[a]t least 1.5 KG but less than 5 KG of Methamphetamine . . ."). This drug quantity included

twelve ounces (340 grams) of methamphetamine which Mata's brother sold to other individuals after Mata's arrest. According to her brother, Mata asked him to "take care of" (i.e. continue to supply methamphetamine to) these individuals after her arrest. (R. Vol. IV at 5.) The probation officer also recommended a two-level enhancement to the base offense level under USSG §2D1.1(b)(1) based on the offense involving the possession of a firearm, a "dangerous weapon." This recommendation was based on the seizure of a .25 caliber handgun (along with thirteen grams of methamphetamine, a scale, pay/owe sheets and other drug paraphernalia) from Mata's residence. Mata informed investigators she needed the firearm for protection. Lastly, the officer recommended a three level downward adjustment to the base offense level under USSG §3E1.1 for acceptance of responsibility. Based on a total offense level of 33 and a criminal history category V, the probation officer determined the applicable guideline range was 210 to 262 months imprisonment.

Mata filed two material objections to the PSR. First, she argued she should not be held accountable for the twelve ounces of methamphetamine her brother sold to other individuals, arguing she never informed her brother to continue to supply methamphetamine to these individuals after she was arrested.[1] She also

[1] Relying on *Crawford v. Washington*, 541 U.S. 36 (2004), Mata argued at sentencing that the district court and probation officer's use of her brother's hearsay statements to establish drug quantity violated her Sixth Amendment right to

objected to the two level enhancement for possession of a dangerous weapon, claiming the .25 caliber handgun could not be used to support this enhancement because it was inoperable and wrapped in Saran Wrap.

On April 5, 2004, Mata appeared for sentencing. As to Mata's objection to the twelve ounces of methamphetamine her brother sold to other individuals, the court determined it was irrelevant as it did not change the guideline calculation, which was based on the amount of methamphetamine she agreed to at her change of plea hearing (i.e. more than 1.5 kilograms but less than five kilograms). The court also overruled her objection to the two-level enhancement for possession of a dangerous weapon, concluding that even if the handgun was inoperable, it still

---

confrontation. In *Crawford*, the Supreme Court held that "testimonial" hearsay is inadmissible at trial unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. 541 U.S. at 68. On appeal, she re-iterates this argument in a one paragraph statement in her opening brief. **[Apt's Br. at 16]** Even assuming she has adequately raised this issue for our review, it fails. *Crawford* applies to the right to confrontation at trial, not sentencing. We have determined that neither the Federal Rules of Evidence nor the Confrontation Clause apply to non-capital sentencing proceedings. *See United States v. Hershberger*, 962 F.2d 1548, 1554 (10th Cir. 1992) (reaffirming Tenth Circuit's position that constitutional provisions regarding the Confrontation Clause are not required to be applied during sentencing proceedings); *United States v. Beaulieu*, 893 F.2d 1177, 1179-81 (10th Cir. 1990) (concluding Federal Rules of Evidence do not apply at sentencing and reliable hearsay evidence can be considered in the sentencing determination); *United States v. Sunrhodes*, 831 F.2d 1537, 1543-44 (10th Cir. 1987) (concluding that the requirements mandated in a criminal trial as to confrontation and cross-examination are not applicable at sentencing proceedings). The Federal Rules of Evidence themselves indicate they do not apply to sentencing proceedings. *See* FED. R. EVID. 1101(d)(3). Because the Sixth Amendment's Confrontation Clause does not apply at sentencing, *Crawford* also does not apply. Nothing in the *Crawford* decision indicates otherwise.

met the definition of dangerous weapon under the guidelines because it closely resembled one.[2] Believing that a sentence at the low end of the guideline range was "more than adequate . . . to punish the conduct in this matter," the court sentenced Mata to 210 months imprisonment.[3] (R. Vol. II at 12.) Consistent with the government's recommendation, the court orally ordered Mata's sentence to run concurrent to her state court prison term and that Mata be given credit for time served beginning on the date she was first incarcerated on the underlying state drug charge, January 14, 2003. In the formal judgment, the court re-iterated its "time served" determination, albeit in the form of a recommendation to the United States Bureau of Prisons (BOP). This appeal followed.[4]

## II. Discussion

Mata raises two arguments on appeal: (1) she was not given the proper credit for time served and (2) she was sentenced in violation of *Blakely.*

---

[2] The definition of "dangerous weapon" under USSG §2D1.1(b)(1) is found in the Commentary to USSG §1B1.1. USSG §2D1.1, comment. (n.3). "'Dangerous weapon' means (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but [] closely resembles such an instrument . . . ." USSG §1B1.1, comment. (n.1(D)).

[3] Pursuant to the plea agreement, if Mata fully and truthfully cooperated with the government, the government would recommend at the time of sentencing or within one year of sentencing a three-level downward departure pursuant to USSG § 5K1.1. Although the government did not make such a motion at the sentencing hearing, it informed the court that Mata was cooperating. It is unclear from the record whether the government ever filed the § 5K1.1 motion.

[4] Mata did not waive her right to appeal in her plea agreement.

A. Sentencing Credit

Mata contends that despite her agreement with the government that her federal sentence would begin to run on January 14, 2003, the date she entered state custody, and the district court's order directing the same, she only received credit for sixty-eight days. She claims she should have received over 300 days of credit. Although somewhat unclear, it appears Mata's argument is that despite the district court's recommendation she receive credit from the time she entered state custody, the BOP has not provided her with that credit. Mata does not substantiate this claim with any documentation. However, even assuming her allegations are true, her remedy lies with the BOP. A district court has no authority to compute or award sentencing credit at sentencing; rather, it is the Attorney General, through the BOP, which has the power to grant sentencing credit in the first instance. *United States v. Wilson*, 503 U.S. 329, 334 (1992); *United States v. Jenkins*, 38 F.3d 1143, 1144 (10th Cir. 1994). Thus, Mata must first raise this issue with the BOP. *Jenkins*, 38 F.3d at 1144. If dissatisfied with the BOP's determination, she may then seek judicial review.[5] *Id.*

---

[5] Although the district court orally ordered at sentencing that Mata receive credit for time served as of the date she entered state custody, it had no authority to do so. Nevertheless, a remand is not required because the order of judgment expressly refers to this "time served" determination as a recommendation only.

B. *Blakely*

Mata contends her Sixth Amendment right to a jury trial, as interpreted by *Blakely*, was violated at sentencing. Specifically, she asserts her base offense level was improperly enhanced to 34 based on the district court's factual finding that her offense involved more than 1.5 kilograms of methamphetamine. She claims her guilty plea only established that her offense involved more than 500 grams of methamphetamine. She also disputes the two-level enhancement under USSG §2D1.1(b)(1) based on the district court's finding that she possessed a "dangerous weapon."

After briefing was completed in this case, the Supreme Court decided *United States v. Booker*, 125 S.Ct. 738 (2005). In *Booker*, the Supreme Court extended its holding in *Blakely* to the federal sentencing guidelines, holding that the Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [to] be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S.Ct. at 755-56. To remedy the constitutional infirmity of the guidelines, *Booker* invalidated their mandatory nature, requiring the district court to consult them in an advisory fashion. *Id.* at 756-57 (severing and excising 18 U.S.C. §§ 3553(b)(1), 3742(e)). Although Mata has not sought to file supplemental briefing addressing *Booker*, raising the Sixth

Amendment issue pursuant to *Blakely* in her opening brief is sufficient to invoke *Booker* as well. *United States v. Trujillo-Terrazaz*, 405 F.3d 814, 817 (10th Cir. 2005). *See also Booker*, 125 S.Ct. at 769 (stating that "both [its] Sixth Amendment holding and [its] remedial interpretation of the Sentencing Act" must be applied to all cases on direct review). Consequently, we will apply the Sixth Amendment analysis of both *Booker* and *Blakely* to this case.

Because Mata did not raise a Sixth Amendment violation before the district court, we review for plain error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 730 (10th Cir. 2005) (en banc). To establish plain error, Mata must demonstrate there is (1) error, (2) that is plain and (3) the error affects her substantial rights. *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005); *Gonzalez-Huerta*, 403 F.3d at 732. If these three prongs are met, we may exercise our discretion to correct the error if Mata establishes "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings," i.e. the fourth prong of plain error review. *Dazey*, 403 F.3d at 1174; *see also Gonzalez-Huerta*, 403 F.3d at 736-37.

The first two prongs of the plain error standard have been met—there was error and the error was plain. *Gonzalez-Huerta*, 403 F.3d at 732. However, contrary to Mata's arguments, the error was "non-constitutional *Booker* error." *Id.* at 731-32 (holding "non-constitutional *Booker* error" occurs when the district

court applies the guidelines in a mandatory rather than advisory fashion, even though the resulting sentence was calculated based solely upon facts admitted by the defendant or found by a jury). Mata admitted at her change of plea hearing that her offense involved more than 1.5 kilograms but less than five kilograms of methamphetamine, supporting a base offense level of 34. As to the gun enhancement, even if this enhancement had been omitted from the court's guideline calculations (and giving Mata the benefit of the three-level acceptance of responsibility adjustment), the applicable offense level would have been 31, resulting in a guideline range of 168 to 210 months imprisonment. Mata received a 210-month sentence—a sentence the district court could have imposed without the possession of a dangerous weapon enhancement. Therefore, no constitutional error occurred as a result of this enhancement. *See United States v. Yazzie*, 407 F.3d 1139, 1144 (10th Cir. 2005) (en banc) ("*Booker* made clear that it is the actual sentence, not the sentencing range, that must be increased based upon judge-found facts in order to violate the Sixth Amendment . . . ."). Thus, no Sixth Amendment violation occurred at sentencing.

Moving to the third prong of plain error review, Mata must show that the district court's erroneous mandatory application of the guidelines affected her substantial rights, that is, that it "affected the outcome of the district court proceedings." *Dazey*, 403 F.3d at 1175 (quotations omitted). However, we need

not decide whether Mata has satisfied the third prong of the plain error standard because, even if she has, we conclude she has not met the fourth prong. *See Gonzalez-Huerta,* 403 F.3d at 736 (concluding it was unnecessary to determine whether the third prong of the plain error test was met because the fourth prong must also be satisfied to obtain relief and the fourth prong was not met).

"Under the fourth prong of plain-error review, a court may exercise its discretion to notice a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* If "non-constitutional *Booker* error" is involved, as in this case, the standard for satisfying the fourth prong is "demanding"—the defendant must show that the error is "particularly egregious" and that our failure to notice it would result in a "miscarriage of justice." *Dazey*, 403 F.3d at 1178 (quotations omitted)*; Gonzalez-Huerta*, 403 F.3d at 736-37. We have recognized that in most cases involving "non-constitutional *Booker* error" the defendant will be unable to satisfy the fourth prong. *See Trujillo-Terrazaz*, 405 F.3d at 820-21 (recognizing the difficulty in establishing the fourth prong in cases involving "non-constitutional *Booker* error" but finding that defendant had satisfied the fourth prong). Mata has not met this demanding standard.

Mata received a sentence within the national norm as established by the guidelines and there is no evidence supporting a lower sentence. *See Gonzalez-*

*Huerta*, 403 F.3d at 738-39 (considering in fourth prong analysis whether the defendant received a sentence within the guidelines/national norm and whether the record supported a lower sentence). At sentencing, the district court recognized the devastating effects the use of methamphetamine had on Mata's life and her potential to lead a "worthwhile life should she be able to deal with [her] substance abuse." (R. Vol. II at 12.) It also acknowledged that the troubles Mata had experienced early in life probably exposed her to substance abuse but noted that she needed to make better choices. Moreover, it indicated that "the havoc that has occurred in [Mata's] life is substantial punishment in and of itself" and sentenced her at the low end of the guideline range, concluding such sentence was "more than adequate" to punish the conduct in this matter. (*Id.*) Despite these sympathetic comments, there is nothing in the record to indicate the district court was unhappy with the guideline sentence or that it would have been inclined to impose a lower sentence, even had it realized it had the discretion to do so. *See United States v. Sierra-Castillo*, 405 F.3d 932, 942 (10th Cir. 2005) (finding that comments of sympathy towards a defendant's circumstances do not in themselves demonstrate that "the sentence implicates the kind of fundamental fairness issues necessary to satisfy the fourth plain-error prong"); *Trujillo-Terrazaz*, 405 F.3d at 821 ("Even if a defendant can demonstrate that the district court felt particular sympathy for him, and might impose a lesser sentence on remand, failing to

-11-

correct [non-constitutional *Booker* error] would not impugn the fairness, integrity, and public reputation of judicial proceedings. Indeed, a remand might do quite the opposite because another defendant convicted of an identical crime under identical circumstances could receive a different sentence from a less sympathetic judge.").

While it is true that district courts now have more discretion to tailor sentences to the "history and characteristics of the defendant" under 18 U.S.C. § 3553(a)(1), including possibly a defendant's struggle with substance abuse, § 3553(a)(2)(D) also requires a district court to consider the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Here, the district court "strongly" recommended as part of Mata's sentence that she be placed in a facility where she can participate in the BOP's Residential Drug Abuse Treatment Program, in an apparent attempt to treat her substance abuse. (*Id.* at 14.) Therefore, the district court adequately considered and addressed Mata's substance abuse; there is no indication the court would rely on her substance abuse to craft a lower sentence on remand.

Based on the above, Mata fails to satisfy the fourth prong of plain error review; thus, we decline to exercise our discretion to correct the error.

### III. Conclusion

The judgment of the district court is **AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge